UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 17-244 |
| JEROME BAILEY | SECTION: "J"(5) |

### ORDER & REASONS

Before the Court is a *Motion for Compassionate Release* **(Rec. Doc. 301)** filed by Defendant, Jerome Bailey, an opposition thereto filed by the Government (Rec. Doc. 305), and a reply by Defendant. (Rec. Doc. 312). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the *Motion for Compassionate Release* should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND[1]

Defendant was indicted as part of a multi-state heroin conspiracy. Defendant bought heroin from individuals operating near the Arizona/Mexico border and distributed it in Chicago. Defendant also distributed heroin to Nathaniel Louis, who distributed the heroin that he received from Defendant on the streets of New Orleans.

Defendant was originally charged in a conspiracy to distribute a kilogram or more of heroin and admitted that the conspiracy involved that quantity in his factual basis. (Rec. Doc. 119). As part of a plea, the government agreed to file a superseding bill of information that reduced the quantity allegation from a kilogram or more of

---

[1] Facts taken from the Government's opposition. (Rec. Doc. 305).

heroin to 100 grams or more of heroin. (Rec. Doc. 118). This had the effect of lowering Defendant's mandatory minimum sentence from 10 years to 5 years. On February 7, 2019, Defendant pleaded guilty to conspiring to distribute 100 grams or more of heroin. This Court sentenced him to 48 months of imprisonment, which was below the guideline range and below the mandatory minimum, which did not apply because Defendant was safety valve eligible. (Rec. Doc. 251). Defendant has served approximately one year and seven months of that sentence and is currently housed at FCI Milan with a projected release date of August 15, 2022. On October 5, 2020, Defendant's motion for compassionate release was e-filed, in which Defendant argues that he should be released due to threat posed by COVID-19.

## LEGAL STANDARD

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)). To meet the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.* Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.*

In addition to finding extraordinary and compelling reasons, the Court must also find that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The U.S. Sentencing Guidelines provide that a reduction should be granted only if "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (p.s.).[2]

If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

## DISCUSSION

### I. EXTRAORDINARY AND COMPELLING REASONS

When deciding whether to grant compassionate release, the Court must first determine whether Defendant has demonstrated "extraordinary and compelling reasons" to justify the reduction of his sentence and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include certain specified categories of medical conditions. § 1B1.13, cmt. n.1(A). Specifically, Defendant must be suffering from either a "terminal illness" or a "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

---

[2] Policy statements are binding in § 3582(c) proceedings. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

3

The CDC has published a list of medical conditions that definitively entail a greater risk of severe illness in the case of infection with COVID-19.[3] The Government concedes that an inmate with one of these conditions that is not expected to recover from that condition, "presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release." (Rec. Doc. 305 at p. 10). In its concession, the Government explains that an inmate with a chronic CDC risk factor has a substantially diminished ability to provide self-care to prevent serious injury or death as a result of COVID-19 within the environment of a correctional facility. (Rec. Doc. 305 at pp. 10-11).

The Government concedes that Defendant has demonstrated an extraordinary and compelling reason for compassionate release. (Rec. Doc. 305 at p. 11). Specifically, Defendant's medical records show that he suffers from obesity and Type II diabetes mellitus, which are both on the CDC's list of medical conditions that definitively increase the risk of severe illness if infected with COVID-19. (Rec. Doc. 305-2 at p. 2). Accordingly, the Court agrees that Defendant has carried his burden of demonstrating an extraordinary and compelling reason for compassionate release.

## II. DETERMINATION OF DANGER TO THE COMMUNITY

Next, the Court must decide whether Defendant has carried his burden of proving that he is not a danger to the safety of the community. § 1B1.13(2). Under 18

---

[3] Center for Disease Control, People with Certain Medical Conditions, (Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

U.S.C. § 3142(g), the Court must consider: (1) the nature and circumstances of the defendant's offense, including whether it is a violent offense; (2) the history and characteristics of the defendant, including his physical condition, criminal history, and history of drug abuse; and (3) the nature and seriousness of the danger to a person or the community at large posed by the defendant's release.

Although Defendant was not convicted of a violent crime, that does not make his offense any less serious or dangerous to the community. "[T]he harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'" *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (citing S.Rep. No. 225, 98th Cong., 1st Sess. 15, *reprinted in* 1984 Code Cong. & Ad.News 3182, 3188–89 (Senate Report)). In fact, Congress was specifically concerned with the threat posed by narcotics distribution to the public when it passed the Bail Reform Act. *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989).

In this case, Defendant was involved in a substantial interstate heroin distribution conspiracy. Defendant sent over $100,000 to drug dealers in Arizona to pay for heroin that he distributed in Chicago. (Rec. Doc. 119). In addition, Defendant distributed heroin to Nathaniel Louis, who in turn distributed heroin in New Orleans. (Rec. Doc. 305 at p. 1). Although he only pleaded guilty to distributing 100 grams or more of heroin, Defendant admitted that he was involved in the distribution of between one and three kilograms of heroin. (Rec. Doc. 119). When Defendant's residence was searched, a loaded firearm was found in his bedroom. (Rec. Doc. 214 at p. 11). Given the interstate heroin trafficking network, the volume of heroin that

5

Defendant was distributing, and the relatively small amount of heroin that could be lethal to a user, it is apparent to the Court that Defendant could pose a serious danger to many communities if released. *See United States v. Cruz-Hernandez*, 422 F. Supp. 3d 157, 162 (D.D.C. 2019) (holding that distributing drugs to a community can cause serious harm to users and innocent individuals); *United States v. Mercer*, 4 F. Supp. 3d 147, 150 (D.D.C. 2013) (holding that the risk of further distribution of large quantities of highly dangerous narcotics posed a significant danger to the community).

In addition, many of the applicable 18 U.S.C. § 3553(a) factors cut against granting Defendant's motion. Defendant has only served one year and seven months of his four-year sentence, which was a downward departure from the mandatory minimum sentence for his crime. Further, if Defendant had been convicted of distributing the amount of heroin that he admitted to trafficking, his mandatory minimum sentence would have been ten years. Releasing Defendant after such a short amount of time would undoubtably undercut the seriousness of his offense, the deterrent value of his sentence, and the public protection afforded by his imprisonment. Therefore, the Court finds that the § 3142(g) and § 3553(a) factors weigh against granting Defendant's motion for compassionate release.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Jerome Bailey's *Motion for Compassionate Release* **(Rec. Doc. 301)** is **DENIED**.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE